**EOD** APR -6 2001

FILED-CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

01 APR -5 PM 3:00

TX EASTERN-BEAUMONT

BY _____

| | | |
|---|---|---|
| SONYA B. COFFMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:99-CV-628 |
| | § | |
| PROVOST ☆ UMPHREY LAW FIRM, | § | |
| L.L.P., WALTER UMPHREY P.C., and | § | |
| T. WALTER UMPHREY, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS WITH PREJUDICE, OR ALTERNATIVELY, TO STAY ACTION

This matter is before the court on "Defendants' Motion to Compel Arbitration and to Dismiss With Prejudice, or Alternatively, to Stay Action" (Dkt. #4), filed on August 30, 1999. Plaintiff filed a Response on September 14, 1999, Defendants filed a Reply on October 5, 1999, Plaintiff filed a Surreply on January 24, 2000, and Defendants filed a Response to Plaintiff's Surreply on January 28, 2000. Upon consideration of the parties' written submissions and the applicable law, the court is of the opinion that Defendants' motion should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Plaintiff is a former employee of Provost ☆ Umphrey Law Firm, L.L.P. ("Provost ☆ Umphrey").[1] Plaintiff originally brought this action against Defendants alleging breach of contract, repudiation, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and violations of Title VII and/or the Texas Commission on Human Rights Act ("TCHRA"). Plaintiff

---

[1] Plaintiff was hired as an associate attorney in 1992 and was subsequently promoted to non-equity partner on January 1, 1995. In the latter part of 1998, Plaintiff voluntarily resigned from Provost ☆ Umphrey.

42

later amended her complaint to add a cause of action under the Equal Pay Act. Defendants ask this court to dismiss Plaintiff's action and to compel submission of all of her claims to arbitration. If this court determines that only some of Plaintiff's claims are subject to arbitration, Defendants alternatively ask this court to stay all proceedings until such arbitration has been completed.

Defendants' motion is based upon various partnership agreements which govern the business and operations of Provost ✶ Umphrey. The original partnership agreement was first effective on August 26, 1986. Plaintiff did not sign that agreement. Since that time, however, the original partnership agreement has been amended and restated on several occasions. Plaintiff admits that she signed the following four partnership agreements:

- Restated Partnership Agreement of Provost ✶ Umphrey Law Firm, L.L.P.--Effective January 1, 1994 ("1994 Partnership Agreement").

- Restated Partnership Agreement of Provost ✶ Umphrey Law Firm, L.L.P.--Effective January 1, 1996 ("1996 Partnership Agreement").

- Amendment No. 1 to the Restated Partnership Agreement of Provost ✶ Umphrey Law Firm, L.L.P., Dated January 1, 1996--Effective January 1, 1997 ("1996 Amendment No. 1").

- Partnership Agreement of Provost ✶ Umphrey Law Firm, L.L.P., As Restated--Effective January 1, 1998 ("1998 Partnership Agreement").

The 1994 and 1996 Partnership Agreements do not contain an arbitration clause. The 1996 Amendment No. 1 and the 1998 Partnership Agreement, on the other hand, both contain an identical arbitration clause as follows:

> Binding Arbitration. The equity partners and non-equity partners shall make a good faith effort to settle any dispute or claim arising under this partnership agreement. If the equity or non-equity partners fail to resolve a dispute or claim, such equity or non-equity partner shall submit the dispute or claim to binding arbitration under the

rules of the American Arbitration Association then in effect. Judgment on arbitration awards may be entered by any court of competent jurisdiction.

Defs.' Mot. at 3. Further, all four of the above-referenced partnership agreements contain an integration clause stating that "[t]his agreement contains the entire agreement . . . and all prior agreements . . . are terminated." *Id.* at 2.

Because Plaintiff signed the 1996 Amendment No. 1 and the 1998 Partnership Agreement, Plaintiff concedes that the following claims must be compelled to arbitration: (1) the enforcability of the 1996 Amendment No. 1 and the 1998 Partnership Agreement; (2) breach of the 1996 Amendment No. 1 and the 1998 Partnership Agreement; (3) repudiation; and (4) breach of the duty of good faith and fair dealing. Plaintiff has already instigated arbitration proceedings with the American Arbitration Association ("AAA") on those issues, but has asked the AAA to stay her claims until this court rules on Defendants' motion. Therefore, this court is left to consider whether Plaintiff's remaining claims for (1) breach of the 1994 and 1996 Partnership Agreements; (2) breach of fiduciary duty; (3) violations of Title VII and/or TCHRA; and (4) violations of the Equal Pay Act must also be compelled to arbitration.

## II. ANALYSIS

Section two of the Federal Arbitration Act ("FAA") states that a written arbitration agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable except on grounds that would permit the revocation of a contract in law or equity.[2] *See* 9 U.S.C. § 2. Section four of the FAA allows a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written arbitration agreement. *See id.* § 4. If a suit is filed in federal court and the court finds that one or more of the issues is referable to arbitration, § 3 of the FAA

---

[2]Neither party disputes that this case involves a transaction involving interstate commerce.

requires a court to stay the action pending arbitration. *See id.* § 3. When ruling on a motion to compel arbitration, the district court must consider two things: "(1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pennzoil Exploration and Production Co. v. RAMCO Energy Ltd.,* 139 F.3d 1061, 1065 (5th Cir. 1998) (citations omitted). In the instant case, both parties agree that a valid arbitration agreement exists; therefore, this court only needs to determine if Plaintiff's remaining claims fall within the scope of the agreement.

A. Scope of the Arbitration Agreement

In determining the scope of an arbitration agreement that falls under the FAA, the court must apply the "federal substantive law of arbitrability." *Harvey v. Joyce,* 199 F.3d 790, 793 (5th Cir. 2000) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 24 (1983)). Federal law in this area requires the court to apply ordinary state law principles of contract construction. *See Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir. 1996) (citations omitted). Texas contract law requires the court to determine the intent of the parties by interpreting the language of the contract in its plain grammatical meaning unless doing so would defeat the parties' intentions. *See R & P Enterprises v. LaGuarta, Garvel & Kirk, Inc.,* 596 S.W.2d 517, 518-19 (Tex. 1980) (citations omitted); *Ikon Office Solution, Inc. v. Eifert,* 2 S.W.3d 688, 694 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (citation omitted). Further, because arbitration is a matter of contract, a party cannot be compelled to submit any dispute to arbitration which he has not agreed to submit. *See United Offshore Co. v. Southern Deepwater Pipeline Co.,* 899 F.2d 405, 408 (5th Cir. 1990) (citing *AT&T Technologies, Inc. v. Communication Workers,* 475 U.S. 643, 648 (1986)); *see also Volt Info. Sciences, Inc. v. Board of Trustees of the LeLand Stanford Junior Univ.,* 489 U.S. 468, 474-75 (1989) (stating that § 4 of the FAA "does not confer a right to compel arbitration of any dispute at

4

any time; it confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement'*") (quoting 9 U.S.C. § 4) (emphasis not in statute).

In applying the rules of contract law, however, the court must bear in mind the strong federal policy favoring arbitration. *See Webb*, 89 F.3d at 258 (citation omitted). The law of arbitration calls for a presumption that when the scope of an arbitration agreement is reasonably in doubt, it should be construed in favor of arbitration. *See Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985) (citing *United Steelworkers of America v. Warrior & Gulf Navigational Co.*, 363 U.S. 574, 583 (1960)). "[A]rbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue.'" *Id.* at 636 (citation omitted). "This presumption can be overcome with clear evidence that the parties did not intend the claims to be arbitrable." *Harvey*, 199 F.3d at 793 (citation omitted).

Keeping in mind the strong federal policy in favor of arbitration, it is also important to note that the Fifth Circuit has made a distinction between "narrow" and "broad" arbitration clauses. *See Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). An arbitration clause is characterized as narrow when the language of the clause requires the arbitration of disputes "arising out of" the agreement. *See Pennzoil*, 139 F.3d at 1067. A broad arbitration clause, on the other hand, includes language such as "any dispute that arises out of or relates to" the agreement, or disputes that are "in connection with" the agreement. *See id.* Here, the arbitration clause states that "[t]he equity partners and non-equity partners shall make a good faith effort to settle *any dispute or claim arising under this partnership agreement*" and if the partners "fail to resolve *a dispute or claim*, such equity or non-equity partner shall submit *the dispute or claim* to binding arbitration." Defs.' Mot. at 3 (emphasis added).

5

Defendants argue that because the arbitration provision contains the words "any dispute" and the words "a dispute or claim," the court should interpret the clause broadly to cover all of Plaintiff's causes of action. The court is of the opinion, however, that the clause is better characterized as a narrow arbitration clause. The sentence containing the words "any dispute" clearly and specifically goes on to limit the disputes to "any dispute arising under *this partnership agreement.*" *Id.* (emphasis added). In the next sentence, the words "a dispute or claim" can only logically be construed as referring directly to the "dispute[s]" discussed in the preceding sentence. Unlike the arbitration clause in the *Hornbeck* case, which referred to "any dispute" whatsoever between the parties, this arbitration clause is focused on only those disputes arising out of the partnership agreement. Furthermore, this arbitration clause does not contain the broader terms "in connection with" or "relating to", which, according to the Fifth Circuit, distinguish a broad arbitration clause from a narrow clause which uses only the term "arising out of" or "arising under" the agreement. Therefore, the arbitration clause is a narrow clause, only requiring the arbitration of Plaintiff's claims which literally arise under the contract. *See Pennzoil*, 139 F.3d at 1067; *see, e.g., United Offshore Co.*, 899 F.2d at 408-09 (holding clause directing the arbitration of disputes "arising out of the interpretation of . . . this agreement" only covered disputes about contract interpretation); *Texaco, Inc. v. American Trading Transportation Co., Inc.*, 644 F.2d 1152, 1154 (5th Cir. 1981) (holding that a claim for damage to a dock was not within the scope of the arbitration clause when the clause provided for the arbitration of disputes "arising out of this Charter"); *Beckham v. William Bayley Co.*, 655 F. Supp. 288, 291 (N.D. Tex. 1987) (holding that a claim regarding performance under the contract did not fall within the scope of the narrow arbitration clause which only required the arbitration of disputes if the parties disagreed "as to the intent of this contract"). It is against this legal framework that the court now turns to its analysis of whether Plaintiff's claims are covered by

the arbitration clause.

## 1. Breach of Contract

Plaintiff's first cause of action alleges that Defendants "breached the various partnership agreements from 1994 through 1998." Plt.'s Third Amended Complaint at 9.  As stated above, Plaintiff signed four successive partnership agreements during that time period.  The first two agreements did not contain an arbitration clause, but the second two agreements each contained an arbitration clause.  Plaintiff concedes that her claims for breach of the 1996 Amendment No. 1 and the 1998 Partnership Agreement are claims "arising under" those agreements and, therefore, are within the scope of the arbitration clauses within those agreements.  Plaintiff disagrees, however, that her claims for breach of the 1994 and 1996 Partnership Agreements are subject to arbitration because neither of those agreements contains an arbitration clause.  The court agrees with Plaintiff's assertion for three main reasons.

First, the conduct underlying the alleged breach of the 1994 and 1996 contracts occurred at a time when no arbitration clause was in effect.  Plaintiff's complaint specifically alleges that during the time the four agreements were in effect, Defendants failed to properly calculate Plaintiff's compensation, failed to promote her, and deprived her of benefits from the tobacco case.  If Defendants did participate in such conduct during the time that the 1994 and 1996 Partnership Agreements were in effect, such conduct could not have "arisen under" the 1996 Amendment No. 1 or the 1998 Partnership Agreement because those agreements did not even exist at that time.  To the extent that the conduct Plaintiff complains of occurred when the 1996 Amendment No. 1 and the 1998 Partnership Agreement were in effect, however, her claims would be subject to arbitration.[3]

---

[3]For example, Plaintiff's allegations that Defendants deprived her of benefits from the tobacco case by forming the tobacco partnership would be subject to arbitration because the partnership entitled Provost ☆ Umphrey Tobacco was created effective January 1, 1998.

7

*See, e.g., Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (arbitration provision in 1994 shipping agreement did not cover conduct that occurred under prior shipping agreements); *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 698 (2d Cir. 1965) (claim based on conduct which had arisen "prior to" effective date of arbitration clause was not within scope of arbitration agreement); *Hendrick v. Brown & Root, Inc.*, 50 F. Supp.2d 527, 533-34 (E.D. Va. 1999) (arbitration clause in fourth contract did not cover conduct that occurred when third contract was in effect); *Connett v. Justus Enterprises of Kansas, Inc.*, Civ. A. No. 87-1739-T, 1989 WL 47071, at *2 (D. Kan. March 21, 1989) (arbitration clause did not apply when alleged fraudulent conduct occurred before plaintiff executed contract with arbitration clause); *George Washington University v. Scott*, 711 A.2d 1257, 1260-61 (D.C. Ct. App. 1998) (conduct that occurred before arbitration clause took effect was not arbitrable).

A second reason that the arbitration clause should not be interpreted as covering Plaintiff's claims for breach of the 1994 and 1996 Partnership Agreements is because the plain grammatical language of the arbitration clause gives no indication that it will apply retroactively. This is further evidence that the parties did not intend to arbitrate disputes that accrued before January 1, 1997, the effective date of the first arbitration clause. To interpret the arbitration clause to apply retroactively would cause Plaintiff to forego her vested right to litigate an accrued claim. *See, e.g., Security Watch*, 176 F.3d at 372-73 (arbitration clause did not reach disputes arising under earlier agreements because it is "nonsensical to suggest that [the plaintiff] would abandon its established right to litigate disputes arising under the [prior] contracts"); *Choice Security Systems, Inc. v. AT&T Corp. and Lucent Technologies, Inc.*, No. 97-1774, 1998 WL 153254, at *1 (1st Cir. Feb. 25, 1998) (arbitration clause in 1994 contracts did not apply to pre-1994 contracts when the language of the arbitration clause did not indicate "that the parties ever contemplated so radical a retroactive renegotiation of

8

their earlier agreements"); *Hendrick,* 50 F. Supp. 2d at 535 (arbitration clause was not retroactive when the text of the clause expressed no language providing that it "reache[d] back in time to require an employee to arbitrate a claim which had accrued before the contract was signed or the [arbitration clause] took effect"); *Connett,* 1989 WL 47071, at *2 (arbitration clause did not apply retroactively when it did not specify that it applied to past conduct); *Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc.,* 745 So.2d 271, 275-76 (Ala. 1999) (arbitration clause was not retroactive when language of the clause did not so state); *George Washington University,* 711 A.2d at 1261 (arbitration clause was not retroactive when "the arbitration clause itself contained no indication whatsoever that its terms would apply . . . before [its effective date]").

Finally, the third reason the court finds that Plaintiff's claims for breach of the 1994 and 1996 Partnership Agreements are not within the scope of the arbitration clause is based on the specific and narrow scope of the clause. The court interprets the language "this partnership agreement" to refer to the 1996 Amendment No. 1 and/or the 1998 Partnership Agreement, not any other agreement. *See, e.g., George Washington University,* 711 A.2d at 1259 (affirming district court's holding that the words "this contract" in 1995 contract mean only the 1995 contract and do not include prior contracts). In order for Plaintiff's claim for breach of the 1994 and 1996 Partnership Agreements to be subject to arbitration, the language of the arbitration clause must have been more expansive. Defendants' insistence that the court should apply the presumption of arbitrability to cover all of Plaintiff's contract claims is not convincing because the presumption only applies when the arbitration clause "is fairly debatable or reasonably in doubt." *See Mar-Len of Louisiana,* 773 F.2d at 635. Here, the language of the clause is clear. Claims for breach of the 1994 and 1996 Partnership Agreements are simply not claims "arising under" the 1996 Amendment No. 1 or the 1998 Partnership Agreement. The narrow provision that the parties chose to use in their

agreements evidences the parties' intent to limit the scope of arbitration. In the absence of a broader

provision, the arbitration clause cannot be held to cover all four agreements.[4]

Defendants disagree and argue that Plaintiff's claims for breach of any of the Partnership

Agreements are arbitrable because each contract contained an integration clause.  As a result,

Defendants argue that the 1994 and 1996 Partnership Agreements have been completely restated and

superseded--first by the 1996 Amendment No. 1 and then by the 1998 Partnership Agreement. The

integration clause in the 1998 Partnership Agreement reads as follows:

> WHEREAS, the current Partners desire to amend and completely restate the
> partnership agreement between them in order to clarify each Partner's respective
> rights, obligations and entitlements in the Partnership.
> . . .
> Section 13.15.  Entire Agreement.  This Agreement contains the entire agreement
> among the Partners relating to the subject matter hereof and all prior agreements
> relative hereto which are not contained herein are terminated.

Defs.' Mot. at 2.  The purpose of an integration clause is to trigger the parol evidence rule which

precludes the enforcement of inconsistent or prior agreements in a finalized contract.  *See F.A.*

*Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958).  In this case, the integration clause

prevents provisions or obligations in the 1994 Partnership Agreement, the 1996 Partnership

Agreement, or the 1996 Amendment No. 1 from being enforceable in the 1998 Partnership

Agreement.  However, the integration clause does not necessarily require the conclusion that

Plaintiff's claims for breach of the 1994 and 1996 Partnership Agreements fall within the scope of

---

[4]The cases that this court was able to locate suggesting that an arbitration clause could include other contracts contained broad arbitration clauses and, thus, are distinguishable. *In re Hops Antitrust Litigation*, 655 F. Supp. 169, 172-73 (E.D. Mo. 1987), for example, suggests that in some circumstances, if there is one general "umbrella" contract covering the parties' on-going relationship, claims arising under other contracts may be arbitrable even if the other contracts did not contain an arbitration clause. In cases where this rule has been applied, however, the arbitration clauses contained broad language, unlike the clause in the present case. *See, e.g.,Consumer Concepts, Inc. v. Mego Corp.*, 458 F. Supp. 543, 544-45 (S.D.N.Y. 1978) (arbitration clause in umbrella contract covering "any controversy or claim arising out of or related to this agreement" included claim arising under separate contract).

the arbitration clause.

The court was only able to locate one Texas case that dealt with a dispute similar to the issue presented in the instant case. In *Howell Crude Oil Co. v. Tana Oil & Gas Corp.*, 860 S.W.2d 634 (Tex. App.--Corpus Christi 1993, no writ), the plaintiff and the defendant entered into a series of three successive contracts governing the purchase and sale of crude oil. The third contract contained an integration clause which stated that the third contract "replaces and supersedes any and all other agreements [between the plaintiff and the defendant]." *Howell*, 860 S.W.2d at 638. Of the three contracts in that case, the second contract was the only one that contained an arbitration clause. The arbitration clause called for the arbitration of disputes "in the case of disagreement between the parties to this contract as to any right, obligation, term or provision thereof." *Id.* The plaintiff sued the defendant for breach of all three contracts, fraudulent misrepresentation, and quantum meruit. The court held that even though the integration clause in the third contract effectively terminated the second contract, any claims arising under the second contract were still subject to arbitration. Any claims arising after the effective date of the third contract, however, were not subject to arbitration.

Although the *Howell* court did not clearly state its reasoning, the court appears to have based its decision on the rationale that this court outlined above. Logically, claims arising from the second contract were governed by the terms under that contract and claims arising under the third contract were subject to the terms of the third contract. Likewise, here the claims for breach of the 1994 and 1996 Partnership Agreements should be governed by the rights and provisions that existed at that time.[5] At the time the claims for breach of the 1994 and 1996 Partnership Agreements accrued, it

---

[5]Although the facts in *Howell* are a flip-flop of the facts in this case (here, the arbitration clause was a part of the later contracts, not the earlier contracts), the holding still applies.

11

was not the intent of the parties to resolve those claims by arbitration. *Cf. Vanguard Underwriters Insurance Co. v. Vecellio Insurance Agency, Inc.*, No. 01-98-00986-CV, 1999 WL 159833, at \*4-5 (Tex. App.--Hous. [1 Dist.], March 11, 1999, no pet. h.) (holding that when there were two agency agreements, the second of which superseded and terminated the first, the tolling provision in the second agreement only applied to claims or conduct occurring after the effective date of the second agreement; the tolling provision did not apply to claims or conduct arising when the first agreement was in effect).

Although the Fifth Circuit has not addressed the "integration clause" argument raised by Defendants, other federal circuit courts have held that when there is a series of contracts, the most recent of which contains an arbitration clause and a "boilerplate" integration clause, claims arising under the earlier contracts are not subject to arbitration. In those decisions, the courts focus on the fact that a "run of the mill" integration clause does not serve to take away a party's right to litigate under prior contracts; rather, the purpose of an integration clause is to prevent prior unincorporated agreements from being enforceable in the final contract.[6] *See, e.g., Security Watch,* 176 F.3d at 372-73 (arbitration clause did not reach disputes arising under earlier agreements despite the fact that the most recent agreement contained an integration clause because purpose of integration clause is to "signal to the courts that the parties agree that the contract is to be considered completely integrated"); *Choice Security Systems,* 1998 WL 153254, at \*1 (standard integration clause in 1994 contracts did not incorporate arbitration clause of 1994 contracts into pre-1994 agreements because integration clauses are "designed to do nothing more than prevent any unincorporated side agreements" from becoming enforceable). State courts have also held this view. *See, e.g., Howell,*

---

[6]The courts also focus on the rationale outlined by this court above--*i.e.*, if the language of the arbitration clause gives no indication that it will apply retroactively it should not be construed to cover conduct that occurred prior to its effective date.

12

860 S.W.2d at 638-39; *Kentucky Fried Chicken Corp. v. Collectramatic, Inc.*, 547 A.2d 245, 248-49 (N.H. 1988) (integration clause in second of two successive contracts did not alter the rights and duties of the parties as to events that occurred under first contract; therefore, indemnification provision that was only a part of the first contract still applied to claims arising under the first contract).

Finally, Defendants' argument that the court should not bifurcate the breach of contract claims because it would result in inefficient adjudication in different forums is unavailing. The Supreme Court rejected such an argument in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). In that case, Byrd invested funds with Dean Witter and signed a contract containing a narrow arbitration clause which provided for the arbitration of disputes arising under the agreement. Byrd sued Dean Witter for violations of the Securities Exchange Act of 1934 and various state law claims in breach of the contract. The Court held that even though all the claims were intertwined, the claims must be bifurcated and only the state law claims could be compelled to arbitration. Claims which did not fall under the contract were to be litigated in court. The Court emphasized the reasoning behind its decision "was to enforce private agreements into which the parties had entered . . . even if the result is 'piecemeal' litigation." *Byrd*, 470 U.S. at 221.

Therefore, this court holds that it can be said with "positive assurance" that the arbitration clause is not susceptible of an interpretation that would cover the contract claims in dispute. First, the conduct giving rise to Plaintiff's claims arose at a time when an arbitration agreement was not in effect; second, the text of the arbitration clause did not indicate an intent to apply retroactively; and third, the narrow language of the clause limits its scope. Thus, Plaintiff's claims for breach of the 1994 and 1996 Partnership Agreements do not fall within the scope of the arbitration clause. To hold otherwise would be to require the parties to arbitrate claims that they did not agree to

arbitrate.

   2. Breach of Fiduciary Duty

   The next consideration for the court is whether Plaintiff's claim for breach of fiduciary duty

falls within the scope of the arbitration clause.  The court holds that it does.  When determining

whether a tort claim falls within the scope of an arbitration clause, courts should focus on the factual

allegations in the complaint, not on the characterization of the legal cause of action.  *See Harvey*,

199 F.3d at 795 (citing *Mitsubishi Motors Corp.*, 473 U.S. 614, 622 n.9 (1985)).  Therefore, claims

"arising under this partnership agreement" are not necessarily limited to breach of contract claims.

*See id.*  This is true even when there is a narrow arbitration clause.  *See, e.g., Valero Energy Corp.*

*v. Wagner & Brown*, 777 S.W.2d 564, 567 (Tex. App.--El Paso 1989, writ denied) (tort claim fell

within scope of narrow arbitration clause).  When applying this rule, the Fifth Circuit has held that

the test is whether the tort is "'so interwoven with the contract that it could not stand alone.'"  *See*

*Ford v. Nylcare Health Plans of the Gulf Coast*, 141 F.3d 243, 250 (5th Cir. 1998) (citations

omitted).  In *Ford*, the Fifth Circuit was applying Texas law under the Texas General Arbitration

Act; however, the Fifth Circuit stated that "there is no perceptible difference between the federal and

Texas standards" regarding the "interwoven with" test.[7]  *See id.* at 250 n.7 (5th Cir. 1998).

Therefore, this court will apply that test to Plaintiff's breach of fiduciary duty claim.

   According to Defendants, Plaintiff's breach of fiduciary duty claim is sufficiently interwoven

with the Partnership Agreements to make that claim arbitrable.  To support their argument,

Defendants cite a number of cases which have specifically held that a breach of fiduciary duty claim

---

   [7]The federal standard is articulated in *Mitsubishi*, where the Court stated that when determining the
scope of a broad arbitration clause, courts should look to whether the claim "touch[es] matters covered by"
the contract.  *See Ford*, 141 F.3d at 250 n.7 (quoting *Mitsubishi*, 473 U.S. at 624-25).  *Mitsubishi* did not
articulate a test for narrow arbitration clauses, such as the one in the present case.  However, Texas courts
apply the "interwoven with" test to both broad and narrow arbitration clauses; therefore, this court finds the
"interwoven with" test the most appropriate test to apply.

falls within the scope of an arbitration clause. *See* Defs.' Mot. at 13 (citing *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334 (7th Cir. 1984), *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983), *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831 (7th Cir. 1977), *Prograph International, Inc. v. Barhydt*, 928 F. Supp. 983 (N.D. Cal. 1996), and *Farino v. Advest, Inc.*, 651 F. Supp. 510 (E.D.N.Y. 1986)). The cases Defendants cite, however, are easily distinguishable. To start, the *Weissbuch* case did not even address the issue of whether a breach of fiduciary duty claim fell within the scope of the arbitration clause. As noted in the opinion, the plaintiffs' complaint in *Weissbuch* did not list breach of fiduciary duty as one of their counts. *See Weissbuch*, 558 F.2d at 832. Further, *Pierson*, *Prograph*, and *Farino*, all contained broad arbitration clauses covering disputes "relating to" or "in connection with" the contract; therefore, the scope of the clause covered a larger category of claims.[8] *See Pierson*, 742 F.2d at 336; *Prograph*, 928 F. Supp. at 987; *Farino*, 651 F. Supp. at 511. Finally, *Mediterranean Enterprises,* although containing a narrow "arising hereunder" arbitration clause, is also distinguishable because the fiduciary duty plaintiff claimed to have been breached by the defendant was "created by the [a]greement." Here, Plaintiff is suing under a common law fiduciary duty, not a fiduciary duty created by the Partnership Agreements. Therefore, the court does not find the cases Defendants cite to be particularly instructive.

To help guide its analysis, the court looks to *Ford*. *Ford* is helpful because the Fifth Circuit discussed in detail the significance of the Texas Court of Appeals decision in *Valero*. In *Valero*, the parties entered into a narrow arbitration clause directing the arbitration of "any disagreement arising

---

[8]Additionally, in the *Farino* case, the court did not fully address the merits of whether the plaintiffs' breach of fiduciary duty claim fell within the scope of the broad arbitration clause because the plaintiffs were not disputing it. *See Farino*, 651 F. Supp. at 513. Similarly, in *Prograph*, the plaintiff did not object to the arbitration of his breach of fiduciary duty claim. *See Prograph*, 938 F. Supp. at 990.

15

under this Contract." *Valero*, 777 S.W.2d at 565. The *Valero* court held that the plaintiff's tort claim fell within the scope of the narrow clause because the tort claim was so interwoven with plaintiff's rights under contract that plaintiff "could have just as easily alleged a breach of contract action." *Id.* at 566. In studying the *Valero* opinion, the Fifth Circuit stated that the purpose of the rule which requires courts to look to the facts underlying the claim rather than the legal label attached to the cause of action, is to prevent a party from "artfully pleading" his claim in order to "dodge arbitration" of a dispute that would otherwise fall within the scope of the arbitration clause. *See Ford*, 141 F.3d at 250. Therefore, Plaintiff may not re-label her breach of contract claim as a breach of a common law fiduciary duty.

Here, the factual allegations underlying Plaintiff's breach of fiduciary duty claim allege that Defendants "inappropriately allocat[ed] fee credits, artificially depress[ed] firm income, usurp[ed] the opportunity of the Tobacco Case, and fail[ed] to properly pay and promote [Plaintiff]." Plt.'s Complaint at 10. Further, Plaintiff's complaint cites section 7.2 of the Partnership Agreements to support her allegation that Defendants have a duty of good faith and fair dealing.[9] Plaintiff does not dispute Defendants' assertion that the Partnership Agreements set forth "the rights, duties and obligations of the Managing Partner, the Equity Partners, and the Non-Equity Partners." Defs.' Reply at 10; *see also* Plt.'s Resp. at 7. Nor does Plaintiff dispute that such rights, duties, and obligations will have to be referred to and constructed in determining whether any fiduciary duty was breached. Plaintiff's only argument that her breach of fiduciary duty claim is not interwoven with the Partnership Agreements is that she is asserting a "common law" breach of fiduciary duty claim instead of one based on contract.

---

[9]A fiduciary duty encompasses, at a minimum, a duty of good faith and fair dealing. *See Crim Truck & Tractor Co. v. Navistar International Transportation Corp.*, 823 S.W.2d 591, 594 (Tex. 1992).

Even if it is conceivable that Plaintiff could maintain a claim for breach of fiduciary duty without the Partnership Agreements,[10] that alone is not sufficient grounds for concluding that the claim is not within the scope of the arbitration clause. The facts underlying Plaintiff's complaint show that, in essence, the claim is based on breach of contract. *See Ford*, 141 F.3d at 250; *Valero*, 777 S.W.2d at 566. As stated above, the Partnership Agreements will determine whether a fiduciary duty was breached--whether that duty arises from the common law or from the contract itself. Not compelling Plaintiff's claim to arbitration would thus allow Plaintiff to dodge the scope of the arbitration clause by artful pleading. For these reasons, the court finds Plaintiff's breach of fiduciary duty claim to be subject to arbitration.

3. Statutory Violations:  Title VII and/or TCHRA and Equal Pay Act

Plaintiff's statutory causes of action allege that Defendants violated Title VII and/or TCHRA by denying Plaintiff equal employment opportunities, treating her less favorably than male employees, and subjecting her to unwelcome sex-based conduct. Plaintiff's complaint further alleges that Defendants violated the Equal Pay Act by denying her equal pay, bonuses, and wages. The law is clear that statutory discrimination claims may be subject to arbitration. *See Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 26 (1991). The court holds that under the facts of this case, however, Plaintiff's statutory claims are not causes of action "arising under" the Partnership Agreements. Plaintiff's statutory rights remain fully independent of the contract. *See Brown v. Trans World Airlines*, 127 F.3d 337, 342 (4th Cir. 1997) (holding plaintiff's Title VII claim was not subject to narrow arbitration clause even when the contract itself prohibited conduct similar to that of Title VII because Title VII remains fully independent of a contract); *see also Ford*, 141 F.3d at

---

[10]*See Brewer & Pritchard v. Johnson*, 7 S.W.3d 862, 867 (Tex. App.--Houston [1st Dist.] 1999, no pet.) (fiduciary duty may exist between lawyers in a firm even in the absence of contract).

17

250-51 (courts should look to whether the claim could stand independently from the contract).

Defendants cite certain language in the Partnership Agreements which they contend is relevant evidence in addressing the merits of Plaintiff's statutory claims, and that thereforeto the claims are "interwoven with" the Partnership Agreements. Just because the Partnership Agreements may be referred to as evidence, however, does not make Plaintiff's statutory claims arbitrable. *See* *Ford*, 141 F.3d at 250 (holding that it is irrelevant if the facts supporting the claim will implicate the agreement as an item of evidence because the focus is on whether the claim could be maintained without the contract). Because Plaintiff's statutory claims could be maintained independently of the contract, such claims do not fall within the scope of the arbitration clause.

Once again, the cases Defendants cite to the court to support their view are easily distinguishable on the grounds that they contain broad arbitration clauses. *See Mouton v. Metropolitan Life Ins.*, 147 F.3d 453, 456 (5th Cir. 1998) (arbitration clause covering "any dispute, claim or controversy that may arise between [the parties]" broad enough to encompass Title VII claims); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996) (arbitration clause covering "any other disputes" broad enough to encompass Title VII claims); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 369 (7th Cir. 1999) (arbitration clause covering "all disputes, including employment disputes" broad enough to encompass Equal Pay Act claim); *Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1437 (N.D. Ill. 1993) (arbitration clause covering disputes "arising out of or relating to" the contract broad enough to encompass Title VII and § 1981 claims). These cases are not sufficiently analogous to convince this court to compel the arbitration of Plaintiff's statutory claims under the narrow clause in this case.

B. Defendants' Opposition to "Optional Procedures"

As a final matter, Defendants ask this court to issue an order requiring that the arbitrable

claims be submitted to the AAA under the standard commercial arbitration rules.  As explained

earlier in this opinion, Plaintiff has already filed a demand for arbitration with the AAA on certain

claims.  When filing her demand, Plaintiff apparently requested that the arbitration be conducted

under the "optional procedure for large, complex commercial disputes."  *See* Defs.' Reply at 12.

Defendants argue that such optional procedures are not appropriate under the circumstances.

Defendants do not cite any legal authority, however, suggesting that this court has the authority to

compel the disputes to be submitted to the AAA under the standard commercial arbitration rules

rather than the optional procedures.  Further, even if the use of the optional procedures would be

inappropriate, the issue is not ripe at this time.  Plaintiff has made a request to the AAA for the

optional procedures rules, but to the court's knowledge, the AAA has not stated whether it will grant

Plaintiff's request.  This is a matter better left to the expertise of the AAA.  As a result, the court

DENIES Defendants' request on this matter.

CONCLUSION

Based on the authorities cited and the reasoning outlined above, Defendants' motion is

GRANTED IN PART and DENIED IN PART.  Plaintiff's claims for (1) breach of the Partnership

Agreements in effect after January 1, 1997; (2) repudiation; (3) breach of good faith and fair dealing;

and (4) breach of fiduciary duty are referred to arbitration.  Plaintiff's claims for (1) breach of the

1994 and 1996 Partnership Agreements; (2) violations of Title VII and/or TCHRA; and (3)

violations of the Equal Pay Act are not compelled to arbitration, but are stayed until arbitration of

the arbitrable claims has been completed.  It is so ORDERED.

SIGNED this the ___4th___ day of ___April___, 2001.

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

19