UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

SEP - 6 2002

DAVID J. MALAND, CLERK
BY
DEPUTY

| | | |
|---|---|---|
| SONYA B. COFFMAN | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 1:99CV628 |
| PROVOST * UMPHREY LAW FIRM, L.L.P., WALTER UMPHREY, P.C., and T. WALTER UMPHREY. | § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff Sonya B. Coffman files this Second Amended Complaint and states:

### PARTIES

1. **Coffman**. Plaintiff Sonya B. Coffman ("Coffman") is an individual resident and citizen of Texas, and a former non-equity partner of the Provost * Umphrey Law Firm, L.L.P.

2. **Provost * Umphrey**. Provost * Umphrey Law Firm, L.L.P. ("Provost * Umphrey") is a Texas partnership governed by various written Partnership Agreements dated August 27, 1986, and thereafter. Provost * Umphrey has been served and has appeared in this action.

3. **Umphrey P.C. and Umphrey**. Defendants Walter Umphrey, P.C. and T. Walter Umphrey, individually (collectively, "Umphrey") is/are the Managing Partners of

PLAINTIFF'S THIRD AMENDED COMPLAINT                                Page 1

108

Provost * Umphrey. Walter Umphrey, P.C. is the alter ego of T. Walter Umphrey and vice-versa. Umphrey (both Defendants) have been served and have appeared in this action.

## JURISDICTION AND VENUE

4. **Venue**. Venue is appropriate in this judicial district and division pursuant to 28 U.S.C. § 1391(b)(1) because at least one defendant is a corporation and subject to personal jurisdiction in this judicial district at the time the action is commenced.

5. **Jurisdiction**. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because certain claims arise under the Constitution, laws or treaties of the United States. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because all other claims are so related to the federal questions that they form part of the same case or controversy.

## BACKGROUND FACTS

6. **Coffman's Legal Background**. Coffman received her Juris Doctorate degree from The University of Texas School of Law in 1989, and became licensed to practice law in Texas in 1989. Thereafter, Coffman practiced law until 1992 with the law firm of Fulbright & Jaworski.

7. **Provost * Umphrey Hires Coffman**. Effective on or about July 6, 1992, Provost * Umphrey hired Coffman as an associate attorney. Umphrey met individually with Coffman, extended the offer for employment, and, upon information and belief, exclusively made the hiring decision and set the terms of Coffman's employment.

8. **<u>Coffman's Promotion to Non-Equity Partner</u>**. Effective on or about January 1, 1995, Coffman was promoted to non-equity partner by executing a new signature page to the 1994 Restated Partnership Agreement for Provost * Umphrey, L.L.P. The 1995 partnership was governed by the terms of the 1994 Partnership Agreement, with the only change in material terms being the addition or deletion of certain partners.

9. **<u>Good Faith Obligation</u>**. As Managing Partner, Umphrey was given the full, exclusive, and complete discretion to manage and control, and to make all decisions regarding the business of Provost * Umphrey. In addition to equitable, statutory, and common-law obligations that he exercise this discretion fairly and in good faith, Section 7.2 of the 1994 Partnership Agreement expressly obligates Umphrey to act in good faith in exercising his responsibilities and authority.

10. **<u>Coffman's Performance as a Non-Equity Partner</u>**. During her tenure as a non-equity partner, Coffman's performance was exemplary. She received many kudos from opposing counsel for her professionalism, knowledge, fairness, and talent. Coffman was also a very productive attorney handling all material aspects of a significant docket of cases for the firm. At no time did Umphrey or anyone else in the firm give Coffman any reprimands or criticism that her work was inadequate. To the contrary, Umphrey stated that Coffman's production numbers were certainly good enough to be promoted to equity partner, that she was one of the smartest lawyers in the firm, and that he had not received any complaints about Coffman's work. Umphrey furthermore stated that Coffman's work was excellent and that he had received compliments on her fine job in handling matters for firm clients.

Moreover, Coffman had been advised by other equity partners that she would be entitled to advance to equity partner.

11. **Violation of the Partnership Agreement Compensation Terms**. Beginning in approximately October 1995, Umphrey unilaterally decided that Coffman would not receive fee credit allocations or be compensated pursuant to the 1994 Restated Partnership Agreement effective January 1, 1995. Umphrey instead exercised complete discretion to set Coffman's compensation on a so-called "trust me" basis. Thereafter, the partnership agreement was purportedly amended in 1996 and again allegedly in 1997 further affecting Coffman's compensation.

12. **The Unilateral Proposed Change to the Partnership Agreement**. On or about August 27, 1998, Provost * Umphrey and Umphrey unilaterally purported to amend the Partnership Agreement, further purporting to do so retroactively effective as of January 1, 1998. Among other things, the 1998 Partnership Agreement contained substantial changes to compensation for non-equity partners, including a new provision allowing Umphrey to override the existing compensation scheme. The 1998 Partnership Agreement also purported to carve out certain tobacco litigation revenues. This 1998 Partnership Agreement was not supported by any consideration. Moreover, non-equity partners were given no advance warning or opportunity to discuss, negotiate, alter, or amend the 1998 Partnership Agreement. Instead, the non-equity partners were ordered to sign the 1998 Partnership Agreement.

13. **Formation of the Tobacco Law Firm**. Effective January 1, 1998, (but actually performed thereafter) certain equity partners in Provost * Umphrey purported to form a Texas general partnership known as "Provost Umphrey Tobacco," purely for the purpose of "facilitating" the receipt of settlement monies associated with the case styled The State of Texas v. The American Tobacco Company, et al., Civil Cause No. 5:96-CV-0091, filed in the United States District Court for the Eastern District of Texas ("Tobacco Case"). Despite her work in supporting the firm and thereby facilitating the opportunity to participate in the Tobacco Case, Coffman was not provided an opportunity to participate in Provost Umphrey Tobacco. Moreover, on information and belief, Provost Umphrey Tobacco did not compensate Provost * Umphrey in any way for Provost * Umphrey's work on the Tobacco Case or for costs incurred by Provost * Umphrey related to the Tobacco Case; Provost Umphrey Tobacco instead was designed to take the earned income and opportunity from Coffman and Provost * Umphrey. As a result, Coffman was deprived of an opportunity she should have had as an equity partner in Provost * Umphrey and/or Provost Umphrey Tobacco. In addition, the revenues and income of Provost * Umphrey were artificially depressed, which unlawfully reduced Coffman's compensation as a non-equity partner.

14. **Lack of Opportunities for Women and Unequal Pay**. On information and belief, in its many years of existence, there has been only one female equity partner in the Provost * Umphrey law firm. There have been only three female non-equity partners in Provost * Umphrey, including Coffman. The female attorneys at Provost * Umphrey are not

offered equivalent positions to male attorneys. Moreover, male attorneys received higher bonuses, wages, and/or compensation than female attorneys, such as Coffman.

15. **The Hostile Environment**. Umphrey individually and other members of the Provost * Umphrey firm (with Umphrey's participation, knowledge, acquiescence, and consent) subjected Coffman and other female employees and non-equity partners to continuous and repeated instances of unwelcome, sexually explicit, and highly offensive sexual harassment. Umphrey and other members of Provost * Umphrey also expressed a discriminatory and demeaning animus towards women in their words and conduct such that it was apparent that Umphrey and other members of Provost * Umphrey did not consider or treat women as their peers. Upon information and belief, sexual harassment and sexual affairs resulting in favorable employment treatment have occurred on many occasions with Umphrey and other equity partners in the firm, thereby creating a sexually harassing environment and an environment wherein it was apparent that employment opportunities were contingent upon acquiescence or compliance in sexually-oriented conduct. Coffman was also subjected to pressure that her child-care and other familial responsibilities were adversely affecting her potential for advancement. The foregoing conduct created a sexually hostile work environment and further shows that compensation and advancement opportunities were dependent upon quid pro quo of a sexual nature. Umphrey, individually and as Managing Partner, participated in, consented to, and/or acquiesced in both the hostile environment and the quid pro quo. There was no meaningful policy against sex discrimination or sexual harassment and no grievance procedure for reporting or resolving

the problems associated with sexual harassment. Moreover, Provost * Umphrey has made no efforts to discourage sexual harassment through education, seminars, private counseling, or the like. The sexually harassing environment and quid pro quo were so pervasive, open, obvious, constant, and severe that Provost * Umphrey, Umphrey, and all other equity partners were both aware of and consented to the sexual harassment. Moreover, given Umphrey's complete and exclusive control of firm business, other firm employees and partners were dissuaded from taking any remedial action regarding sexual harassment. The knowledge of the sexual harassment and discrimination by all equity partners of Provost * Umphrey, including Umphrey, can be imputed inter alia and to Provost * Umphrey. The sexual harassment to which Coffman was subjected was severe, pervasive and prolonged.

16. **Unlawful Further Reduction in Pay**. In the latter part of 1998, Umphrey began criticizing Coffman, not for her quality or quantity of legal work, but for failing to socialize with the men in the firm. Despite Coffman's consistently excellent performance and the unwavering praise she had received, in December 1998, Coffman was informed that her bonus would be cut by over 50%, thereby substantially reducing her 1998 income. On information and belief, there was no reasonable basis for this cut in compensation.

17. **Other Gender Discrimination**. In addition to the foregoing, Coffman was discriminated against on the basis of her sex in many ways, including without limitation the following:

(i) Males received more favorable treatment regarding case responsibility, fee credits, and other job opportunities than females;

(ii) Males were promoted over Coffman to become equity partners and/or the heads of departments, even though Coffman was better qualified than those promoted;

(iii) The practice regarding promotion to equity partner at Provost * Umphrey has been, at times, predetermined and made in advance of the formal selection process as described in the partnership agreements and based solely upon the decision of Umphrey. The alleged selection process for promotion to equity partner is nothing more than a facade which allows Umphrey to discriminate on the basis of sex.

(iv) Males received higher bonuses, wages, and/or compensation than female attorneys, such as Coffman; and

(v) The managing partner, Umphrey, generally treated males more favorably than females in connection with business decisions at the firm.

These discriminatory acts have been an historical practice at Provost * Umphrey. These actions are indicative of Provost * Umphrey's disparate treatment of female attorneys.

18. **Coffman's Constructive Discharge**. On or about January 4, 1999, Coffman was constructively discharged from Provost * Umphrey.

19. **Coffman's EEOC Complaint**. On or about June 30, 1999, Coffman filed her charge of discrimination with the United States Equal Employment Opportunity Commission

("EEOC") and Texas Commission on Human Rights ("TCHR") naming Provost * Umphrey and Umphrey and charging each of them with sexual discrimination and harassment in violation of Title VII and the Texas Labor Code. The EEOC issued a Right to Sue Letter on or about February 15, 2000, over 180-days after the filing of the charge. All administrative prerequisites to bringing Title VII and TCHRA claims have been satisfied.

**20.** **Conditions Precedent**. Coffman has satisfied all conditions precedent to the filing of this action and assertion of all claims herein or any such conditions precedent are excused by the doctrines of tolling, waiver, estoppel, and/or laches.

## CAUSES OF ACTION

Coffman asserts the foregoing background facts in support of the following causes of action:

**21.** **Breach of Partnership Agreements**. Provost * Umphrey and Umphrey breached the various partnership agreements from 1994 through 1998, to the extent same are enforceable or valid, by, among other things, (1) failing to properly calculate and pay Coffman compensation and/or bonuses; (2) failing to promote Coffman to equity partner and as head of the asbestos department; and (3) depriving Coffman of the benefits of the Tobacco Case. For example, and subject to a full and final accounting, Coffman was not given appropriate fee credits and firm compensation was artificially depressed, both of which served to lower both the available bonus and the cap on non-equity partner compensation. Coffman sues for all past and future damages proximately caused by Defendants' breaches of contract.

22. **Repudiation**. On or about August 27, 1998, Provost * Umphrey and Umphrey repudiated the Partnership Agreements in place prior thereto by circulating and forcing the non-equity partners to sign a purported "new" 1998 Partnership Agreement that was back-dated retroactively nearly nine months. This conduct evidenced a clear and unequivocal intent not to be bound by the true Restated Partnership Agreement. Accordingly, Coffman is entitled to recover all future compensation to which she would have otherwise been entitled as a non-equity partner and, as promoted, as an equity partner.

23. **Breach of Fiduciary Duty**. Umphrey, Provost * Umphrey, and the other equity partners owed Coffman a fiduciary duty as both a non-equity partner and as a future equity partner, a position to which she was entitled to be promoted. Defendants breached their fiduciary duty by, among other things, inappropriately allocating fee credits, artificially depressing firm income, usurping the opportunity of the Tobacco Case, and failing to properly pay and promote Coffman. A full and final accounting may reveal other breaches of fiduciary duty by Umphrey and other equity partners, which breaches may have reduced firm income and deprived the firm of opportunities.

24. **Breach of the Duty of Good Faith and Fair Dealing**. By virtue of undertaking full, exclusive and complete discretion to manage and control all partnership business, and furthermore because of his express obligation to act in good faith, Umphrey had a duty of good faith and fair dealing to Coffman and all partners of the firm. Among other things, and subject to a full and final accounting, Umphrey breached his duty of good faith and fair dealing by (1) failing to abide by the partnership agreements in setting non-equity partner

compensation; (2) diverting firm income and/or increasing firm expenses; (3) diverting the earned business opportunity of Provost * Umphrey in the Tobacco Case to a purported new partnership, thereby depriving Coffman (who should have been entitled to participate as an equity partner in the Tobacco Case) and other non-equity partners of a business opportunity to which they were entitled and which they had helped earn; and (4) failing to promote Coffman to equity partner and head of the asbestos department.

25. **Title VII and State Law Discrimination Claims**. The above-described acts and practices of Defendants constitute discrimination against Coffman with respect to the compensation, terms, conditions and privileges of her employment because of her sex (female) in violation of 42 U.S.C. § 2000e et seq. and the Texas Commission on Human Rights Act, Texas Lab. Code Ch. 21, including but not limited to § 21.051. Defendants' actions have denied Coffman equal employment opportunities with the firm of Provost * Umphrey and Coffman has been treated less favorably than her male counterparts because of her sex. Coffman asserts that, as a member of a protected class, she was subjected to sex discrimination in the promotion and pay practices of Provost * Umphrey, as well as received disparate treatment as a result of her sex. Coffman further asserts that, as a member of a protected class, she was subjected to unwelcome sex-based conduct during the course of her employment and partnership with Provost * Umphrey. Coffman asserts that this unwelcome sex-based conduct was so severe and pervasive that it created an intimidating, hostile, offensive, insulting, and demeaning workplace. Coffman also asserts that this sex-based and unwelcome conduct made it clear that female employees were subject to compensation,

terms, conditions, and privileges of employment dependent upon their conduct and compliance in response to this unwelcome sex-based conduct, and, thus, constituted quid pro quo sexual harassment. Coffman asserts that Provost * Umphrey's and Umphrey's conduct has adversely affected and altered the terms, conditions, and privileges of her employment and partnership, constituted a constructive discharge, and constituted a tangible employment and partnership action. Coffman asserts that Umphrey's knowledge and the knowledge of other equity partners in Provost * Umphrey may be imputed to Provost * Umphrey and to all other equity partners, making all such persons jointly and severally liable for the above-described unlawful conduct. Defendants also failed to exercise reasonable care to prevent and correct promptly the sexually harassing and/or discriminatory behavior by, among other things, failing to provide adequate training and education; failing to provide an effective procedure for reporting sexual harassment; failing to monitor the conduct of persons with supervisory authority within the firm; failing to provide employees and non-equity partners with a work environment where employees felt safe to complain about sexual harassment; and failing to take appropriate remedial action to correct and remedy the effects of sexual harassment in the workplace.

26. **Violations of the Equal Pay Act**. The above-described acts and practices of Defendants constitute violations of the Equal Pay Act, 29 U.S.C. § 206(d). Specifically, Coffman received less pay, bonuses or wages than male attorneys who performed equal or substantially equal work under similar working conditions. Coffman possessed equal, if not superior, skills as such male attorneys. Coffman exercised equal, if not superior, effort in

her work performance and was responsible for the same or substantially the same type of work as such male attorneys. The Defendants' actions in denying Coffman equal pay, bonuses or wages were continuing in nature, willful and intentional.

27. **Punitive Damages**. The foregoing wrongful actions were conducted with malice and/or reckless indifference to the federally protected rights of Coffman. Defendants are, therefore, subject to punitive damages.

## ANSWERS TO AFFIRMATIVE DEFENSES

28. **Continuing Violation**. Defendants' statute of limitations defense is barred, in whole or in part, because Defendants engaged in continuing violations of applicable law, which violations continued within any applicable period of the statute of limitations.

29. **Discovery Rule**. Defendants' statute of limitations defense is barred, in whole or in part, by the discovery rule.

30. **Fraudulent Concealment**. Defendants' statute of limitations defense is barred, in whole and in part, by the doctrine of fraudulent concealment. In addition, Defendants had a fiduciary duty to disclose all financial and performance related information to Coffman, which Defendants failed to reveal. Accordingly, Coffman had no knowledge of all of the available facts.

31. **Alter Ego**. Defendants acted as the alter ego of one another and are therefore jointly and severally liable for all of the conduct alleged herein. Among other things, T. Walter Umphrey and Walter Umphrey, P.C. treated Provost*Umphrey as their alter ego and

used Provost*Umphrey firm funds for personal expenses of T. Walter Umphrey and/or Walter Umphrey, P.C.

32. **Respondeat Superior**. Provost*Umphrey is responsible under the doctrine of *respondeat superior* for all of the conduct of the Equity Partners of Provost*Umphrey, together with the conduct of Umphrey, P.C. and Umphrey.

33. **Estoppel**. All of Defendants' equitable affirmative defenses, including without limitation the defenses of estoppel, laches, unclean hands, *quantum meruit*, and unjust enrichment are barred by the doctrine of estoppel.

34. **Unclean Hands**. All of Defendants' equitable affirmative defenses, including without limitation the defenses of unclean hands, laches, estoppel, *quantum meruit*, and unjust enrichment are barred by the doctrine of unclean hands.

35. **Laches**. All of Defendants' equitable affirmative defenses, including without limitation the defenses of laches, unclean hands, estoppel, *quantum meruit*, and unjust enrichment are barred by the doctrine of laches.

36. **Material Breach and Repudiation.** Defendants' defenses predicated on any breach of contract by Plaintiff or failure to comply with conditions precedent are barred, in whole or in part, because Defendants materially breached and/or repudiated the applicable contracts between the parties.

37. **Ambiguity**. Although Defendants inconsistently plead the parol evidence rule and novation via verbal agreements, Plaintiff is required to plead ambiguity in response to pleadings of the parol evidence rule. To the extent Defendants seek to exclude extrinsic

evidence of the parties' agreements, Coffman pleads that ambiguity may require the admission of verbal and written extrinsic evidence regarding the parties' agreements.

38. **Good Faith**. Defendants' affirmative defenses are barred, in whole or in part, because they failed to comply with their express and implied obligations of good faith.

## PRAYER

39. **Relief Requested**. Coffman requests that upon final hearing and trial, Coffman have judgment against Defendants, jointly and severally, for the following items:

- a. Granting Coffman a declaratory judgment declaring that the past practices of Defendants as complained of herein were unlawful;

- b. Granting injunctive or equitable relief sufficient to secure the rights of Coffman under 42 U.S.C. § 2000e and the Texas Labor Code, including an order of this Court that Coffman be immediately instated to equity partner status in Provost * Umphrey as of January 1, 1997 and instatement as an equity partner in Provost * Umphrey Tobacco from its inception;

- c. All damages proximately caused by the unlawful conduct, including without limitation all back pay, front pay, and lost opportunities as a non-equity and an equity partner (including without limitation all benefits arising out of and relating to the Tobacco Case);

- d. All pre and post-judgment interest;

- e. Exemplary damages;

- f. Attorneys' fees, costs of suit, and expert witness fees; and

g.  Such other and further relief, general and special, legal and equitable, to which Coffman may be justly entitled.

### JURY DEMAND

Coffman herein demands a trial by jury.

Respectfully submitted,

_____
Keith R. Verges
Texas State Bar No. 20547650
ATTORNEY-IN-CHARGE

Timothy A. Daniels
Texas State Bar No. 05375190
OF COUNSEL

Monica L. Luebker
Texas State Bar No. 12670750
OF COUNSEL

FIGARI DAVENPORT & GRAVES, L.L.P.
4800 Bank of America Plaza
901 Main Street
Dallas, Texas  75202
TEL: 214-939-2000
FAX: 214-939-2090

ATTORNEYS FOR PLAINTIFF
SONYA B. COFFMAN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent via FedEx to Lawrence Louis Germer, Germer & Gertz, L.L.P., 805 Park Street, Beaumont, Texas 77701 on the 30th day of August, 2002.

_____
Keith R. Verges

I:\11208\0001\Pleadings\complaint.amended.3.wpd

**PLAINTIFF'S THIRD AMENDED COMPLAINT**                                                              Page 17