EOD  MAY - 7 2003

FILED - CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT   2003 MAY -7  AM 9: 11
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION                    TX EASTERN-BEAUMONT

BY _____

| | | |
|---|---|---|
| SONYA B. COFFMAN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.  1:99-CV-628 |
| | § | |
| PROVOST ★ UMPHREY, L.L.P., | § | |
| WALTER UMPHREY, P.C., and | § | |
| T. WALTER UMPHREY, | § | |
| | § | |
| Defendants. | § | |

ORDER AND OPINION DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR RECONSIDERATION

This matter is before the court on "Defendants' Motion for reconsideration of Order Granting

in Part and Denying in Part Plaintiff's Second Motion to Compel Written Discovery" filed on April

7, 2003 (Dkt. #139).  Plaintiff Sonya Coffman filed a response in opposition on April 22, 2003 (Dkt.

#142).  Upon consideration of the motion, response, and applicable law, the court is of the opinion

that the motion should be DENIED in part and GRANTED in part.

I.  The March 19, 2003, Order (Dkt. #133)

The motion for reconsideration currently pending before the court seeks a reversal of the

court's decision to compel the production of three specific categories of written discovery: (1) Firm

Income and Expenses;[1] (2) Outside businesses;[2] and (3) Tobacco Fees and Expenses.[3]

---

[1] From *Defs.' Resps. & Objs. to Pl.'s Request for Prod.* (March 19, 2003, Order, Ex. 1,
Section D):

> 41. All records reflecting the income, revenue, expenses, or profits of Provost ★
> Umphrey, including any partnership books and records required to be maintained
> by any partnership agreement of Provost ★ Umphrey for the period of January 1,

-1-

147

After considering the Plaintiff's second motion to compel, the court concluded that documents relating to firm income and expenses for the years 1995 and 1996 were relevant and discoverable because of their relation to the calculation of Plaintiff's salary as a non-equity partner under the partnership agreement.  March 19, 2003, Order, at 4-5.  Secondly, the court granted Plaintiff's request to compel documents related to the outside business activities of other partners and male attorney's at Provost ☆ Umphrey.  The rationale in allowing the discovery was to give

---

1994 through 1996.

[2]From *Defs.' Resps. & Objs. to Pl.'s 3d Request for Prod of Docs.* (March 19, 2003, Order, Ex. 1, Section M):

18. All documents evidencing income or benefits received by any equity partner or non-equity partner in connection with business activities outside Provost ☆ Umphrey, including without limitation, banks, funeral homes, ranches, golf courses, and real estate investments, from 1992 to present.
20. All documents evidencing the schedule of any non-equity partner or equity partner and/or the number of hours or time spent at any business outside the Provost ☆ Umphrey law firm, including without limitation, banks, funeral homes, ranches, golf courses, and real estate investments in which any present or former non-equity or equity partner had an ownership interest from 1992 to 1999.
34. For each male attorney who received more compensation than Coffman, and who participated or had ownership or beneficial interest in an outside business, please produce such attorneys' telephone records, from 1992 through 1999.
35. For each male attorney who received more compensation than Coffman, and who participated or had ownership or beneficial interest in an outside business, please produce all documents evidencing income or benefits received by them from each such business, from 1992 through 1999.

[3]From *Defs.' Resps. & Objs. to Pl.'s 3d Request for Prod of Docs.* (March 19, 2003, Order, Ex. 1, Section N):

26. All attorneys' fees and other income received by Provost Tobacco.
27. All expenses in conjunction with the Tobacco Litigation.
33. All documents reflecting any reimbursement by Provost Tobacco to Provost ☆ Umphrey that arise out of or relate to the Tobacco Litigation, including without limitation reimbursement for out-of-pocket expenses, reimbursement for lost opportunity costs, and reimbursement for time spent by attorneys at Provost ☆ Umphrey working on the Tobacco Litigation.

Plaintiff an opportunity to establish that one of the proffered reasons given for her allegedly adverse employment treatment, namely, that her work performance was affected by her outside interests, is a mere pretext for sexual discrimination. The court concluded that the requested documents were relevant to compare Plaintiff's treatment with others similarly situated. *Id.* at 8. Lastly, the court allowed discovery related to the fees and expenses of the tobacco litigation based on its relevancy to Plaintiff's claims for front pay under her Title VII failure to promote claim and for breach of contract based on the alleged improper diversion of income. *Id.* at 8-9.

## II. Motion for Reconsideration Standard

"Motions for reconsideration 'serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Lupo v. Wyeth-Averst Labs.*, 4 F. Fupp. 2d 642, 645 (E.D. Tex. 1997) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Motions for reconsideration "should not be used to raise arguments that could, and should, have been made before the entry of judgment . . . [or] to re-urge matters that have already been advanced by a party." *Id.* (citations omitted). A motion for reconsideration is not "the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier . . . ." *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994). "[L]itigants are expected to present their strongest case when the matter is first considered. A motion to reconsider based on recycled arguments only serves to waste the resources of the court." *State v. Sprint Comm. Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995) (citations omitted). While the standard is strict, the court strives to correct any errors of law previously made.

## III. Analysis

In their response to the original motion, Defendants objected to the production of documents relating to firm income and expenses as "wholly irrelevant and unrelated to any of Plaintiff's

claims." *Defs.' Resp. to Pl.'s 2d Mot. to Compel*, at 6. Additionally, Defendants argued that the "cap" did not exist because "Coffman's compensation was entirely at the discretion of Umphrey." *Id.* In the motion to reconsider, Defendants have chosen not to disagree with the court's order compelling the production of financial documents relating to the year 1996, but rather to argue that only 1995 documents are irrelevant because Coffman's compensation was not limited by the "cap" in that year. *Defs.' Mot. for Recons.*, at 2-3.

Defendants present an affidavit supporting the contention that Coffman's compensation was not limited by the "cap" in 1995. This argument was clearly available when Plaintiff's second motion to compel was filed,[4] and should have been presented to the court earlier. However, the court finds that even if Coffman did not "cap out" in 1995, the discovery is still relevant given the broad scope allowed generally under the federal rules and specifically for Title VII cases. The court allowed this type of discovery for 1996 because Plaintiff will have the heavy burden of proving that Walter Umphrey breached his duty by acting with gross negligence or without good faith. The same discovery for 1995 could lead to admissible evidence to prove a breach of that duty for 1996, by allowing Coffman to compare expenses from year to year. Therefore, as to the firm income and expenses for the year 1995, the motion for reconsideration is DENIED.

Defendants originally objected to discovery related to the outside business as not relevant and an invasion of privacy. *Defs.' Resp. to Pl.'s 2d Mot. to Compel*, at 10. Now, Defendants argue that the court's order is overly broad because it grants information on *all* equity and non-equity partners, as well as any male associate who was paid more than Coffman, rather than information

---

[4]While the Plaintiff did not specifically allege in her motion that she "capped out" in 1995, the Defendants should have been aware that she contended that her compensation was limited by the cap during that year. *See* Pretrial Hearing, at 171:2 ("Ms. Coffman was informed that she capped each year.")

related only to others similarly situated to Coffman. *Defs.' Mot. for Recons.*, at 3-4.

Defendants' contention that the Order sweeps too broadly by compelling documents pertaining to certain equity partners', and specifically Walter Umphrey's, outside business interests is well grounded. Although the court has repeatedly concluded that Coffman is not required to provide a list of those attorneys she contends she is similarly situated to, Plaintiff does not, and cannot, contend that she is similarly situated to all equity partners.

Defendants "have offered to provide the information sought for any attorney Plaintiff identifies as similarly situated to her." *Defs.' Mot. for Recons.*, at 4. The potential scope of similarly situated persons is not all equity and non-equity partners. Therefore, Requests 18, 20, 34 and 35 should be limited to non-equity partners who were promoted to equity partner during Plaintiff's tenure as non-equity partner. Therefore, the motion is GRANTED as to Requests 18, 20, 34 and 35 as outlined.

Defendants originally objected to discovery related to tobacco fees and expenses as overly broad and irrelevant. *Defs.' Response to Pl.'s 2d Mot. to Compel*, at 10-11. The court rejected those arguments by finding that the information could lead to admissible evidence on Plaintiff's claims for breach of contract and for front pay under Title VII. March 19, 2003, Order, at 8-9. Now, Defendants contend that "Plaintiff's breach of contract claims relating to the formation of Provost Tobacco in 1998 are not a part of this suit and are time barred." *Defs.' Mot. for Recons.*, at 8. Plaintiff disputes the legal and factual premises of Defendants' argument. This motion does not present the appropriate opportunity to resolve these differences. Additionally, all the arguments made in the motion for reconsideration were available and either not presented or presented and rejected previously.

It is possible that if Provost ☆ Umphrey improperly paid expenses related to the tobacco

litigation, without being reimbursed, the partnership agreements forming the basis of the claims in this court were breached. The factual issues surrounding Plaintiff's claim for front pay have not been resolved, therefore it is premature to restrict discovery regarding this issue. All discovery in this suit is the subject of a protective order to protect sensitive information. The Plaintiff was a partner at Provost ★ Umphrey and should be allowed to fully investigate her claims.

To fully investigate her claims, the Plaintiff must be allowed access to documents that reflect expenses paid by Provost ★ Umphrey in connection to the tobacco litigation, any reimbursement by Provost Tobacco to Provost ★ Umphrey for those expenses, any reimbursement by Provost Tobacco to Provost ★ Umphrey for time spent by attorneys at Provost ★ Umphrey for work done in connection to the Tobacco Litigation, and all attorney's fees and other income received by Provost Tobacco.

Upon reviewing the discovery requests in dispute related to the tobacco litigation, the court is of the opinion that Requests 26, 27 and 33 request information that is relevant. Documents reflecting expenses allegedly paid by Provost ★ Umphrey, but not reimbursed, in relation to the tobacco litigation could form the basis of the breach of contract claims presented in this suit or determine the amount of damages and are, therefore, discoverable. Documents reflecting both income and expenses in relation to the tobacco litigation would be relevant to Plaintiff's claim for front pay if she should succeed on her failure to promote/Title VII claim. Alternatively, documents reflecting net income (profit) from the tobacco litigation should suffice in place of documents reflecting the itemization of the fees and expenses as requested in requests for production 26 and 27. Therefore, the motion for reconsideration of the order compelling production of documents related to the tobacco litigation is DENIED to reflect what the court concludes is relevant discovery.

IV. <u>Conclusion</u>

Upon consideration of the motion, response, and applicable law, the motion for reconsideration is hereby DENIED in part and GRANTED in part as specified above. Defendants are ORDERED to produce all responsive documents within fifteen (15) days of the entry of this order.

SIGNED this the 6th day of May, 2003

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE